UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:20-cv-02135

| | |
|---|---|
| FRED NEKOUEE, individually, | : |
| | : |
| Plaintiff, | : |
| | : |
| vs. | : |
| | : |
| QIQO, L.L.C., a Colorado limited liability company; | : |
| | : |
| DD QIQO, LLC, a Colorado limited liability company; | : |
| | : |
| GE QIQO, LLC, a Colorado limited liability company; | : |
| | : |
| and | : |
| | : |
| ABSOLUTE AUBERGE, L.L.C., a Colorado limited liability company; | : |
| | : |
| Defendants. | : |

_____/

## **COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendants, QiQo, L.L.C.; DD QiQo, LLC; GE QiQo, LLC; and Absolute Auberge, L.L.C.; all Colorado limited liability companies (sometimes referred to as "Defendants"), for injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County

of Hillsborough.

2.      Defendants' property, the Quality Inn hotel, has an address of 1196 W. Dillon Road, Louisville, Colorado 80027 ("Quality Inn").

3.      Venue is proper in the District of Colorado because venue lies in the judicial district of the situs of the property.   The Defendants' property is located in and does business within this judicial district.

4.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

5.      Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple sclerosis, weak limbs, and he requires the use of a wheelchair for mobility.

6.      Mr. Nekouee travels to the Longmont area every three to six months to accompany his brother at heavy equipment auctions and to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to vacation.

7.      Fred Nekouee stayed at the Quality Inn which forms the basis of this lawsuit with a check-in on October 1, 2019 and a check-out on October 2, 2019.   He also visited the Quality Inn on March 6, 2020.

8.      Fred Nekouee requested an accessible room for his stay at the Quality Inn.

9.      Fred Nekouee stayed in accessible room 124 at the Quality Inn.

10.      Due to the barriers to access Fred Nekouee encountered at the Quality Inn on both of his visits to the Quality Inn, Fred Nekouee is deterred from visiting the Quality Inn.

11.    Fred Nekouee visited the Longmont area in early August 2018 and again on September 29, 2018 through October 4, 2018 to attend a heavy equipment auction, and he visited Rocky Mountain National Park on October 2, 2018.

12.    The Plaintiff returned to the Longmont area on February 3-6, 2019, May 7-10, 2019, September 30 through October 2, 2019 and again from March 3-6, 2020.

13.    Fred Nekouee attended a heavy equipment auction on August 1, 2018, October 3, 2018, May 8, 2019, October 2, 2019 and on March 4, 2020 in Longmont, Colorado.

14.    The Plaintiff plans to return to the Longmont area in late September or early October 2020 to attend a heavy equipment auction and to vacation.

15.    Quality Inn is in Louisville on the way back from Longmont just off of Interstate 36 with access to I-70 via I-270 for easy access to Denver International Airport, and it is a good hotel location for access to Longmont.

16.    The Plaintiff visited the Quality Inn on March 6, 2020 and saw that barriers to access remain.

17.    The Plaintiff likes to stay at moderately-priced hotels like Quality Inn.

18.    The Plaintiff plans to return to the Quality Inn again if the barriers to access are removed.

19.    The Plaintiff has encountered architectural barriers at the subject property.

20.    The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability or those accompanying him to park a vehicle, and have impaired his ability to access the property.

21.    The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

22.     The Plaintiff cannot move up steep inclines or down steep slopes in his wheelchair because he lacks the strength and also risks tipping his wheelchair backwards or forwards.

23.     The Plaintiff encountered and observed barriers to access in the parking lot and walking surfaces, lobby, breakfast area, fitness center, lobby restrooms, and in accessible guestroom 124, and the restroom in accessible guestroom 124 of the Quality Inn.

24.     There is no access aisle adjacent to one of the parking spaces for disabled patrons at the Quality Inn.

25.     In the parking lot, parking spaces for disabled patrons at the Quality Inn have running slopes steeper than 1:48 and steeper than 3.1%.

26.     The Plaintiff is deterred from visiting the Quality Inn because of the difficulties he will experience there until the property is made accessible to him in a wheelchair.

27.     During his visits to the Quality Inn, Fred Nekouee observed and encountered barriers to access in the parking lot, access aisles and walkways, in the lobby and breakfast area, and in accessible guestroom 124.   Due to such barriers to access, Fred Nekouee is deterred from staying at the Quality Inn.

28.      Defendants own, lease, lease to, or operate a place of public accommodation (an inn, hotel, motel, or other place of lodging) as defined by the ADA, 42 U.S.C. § 12181(7)(A), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104, the Quality Inn.

29.     Quality Inn is a place of lodging.

30.     Quality Inn is a place of public accommodation.

31.     The Quality Inn was built after the year 1993.

32.     Defendants are responsible for complying with the obligations of the ADA.

33.     Fred Nekouee has a realistic, credible, existing and continuing threat of

discrimination from the Defendants' non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 40 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendants.

34.     Fred Nekouee desires to visit the Quality Inn not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

35.     The Defendants have discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

36.     The Defendants have discriminated, and are continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

37.     Preliminary inspections of the Quality Inn show that ADA violations exist.

38.     Physical conditions at the Quality Inn are accurately described in each romanette (i) of each lettered subparagraph of paragraph 40 below.

39.     The ADA violations that Fred Nekouee personally encountered and observed at the Quality Inn include, but are not limited to, those set forth in paragraph 40.

40.     At the Quality Inn:

## PARKING

a.   (i) In the parking lot, none of the parking spaces for disabled patrons has van accessible signage.   (ii) In the parking lot, none of the parking spaces for disabled patrons has van accessible signage, in violation of Federal Law 2010; ADAAG §§ 208.2.4 and 502.6.   (iii) Due to such lack of signage indicating "van accessible," the Plaintiff's driver had difficulty finding a parking space suitable for a van.   (iv) The action required to install "van accessible" signage is easily accomplishable and able to be carried out without much difficulty or expense.

b.   (i) In the parking lot, one of the parking spaces for disabled patrons does not have an adjacent access aisle.   (ii) One of the parking spaces for disabled patrons shown in the photographs below (lowermost photograph taken on March 6, 2020 showing a newspaper from the day before) does not have an adjacent access aisle, in violation of Federal Law 2010; ADAAG § 502.1 and 502.3.3.   (iii) Due to the lack of an adjacent access aisle, the Plaintiff had difficulty unloading from and loading back into his vehicle.   (iv) The action required to restripe this section of the parking lot is easily accomplishable and able to be carried out without much difficulty or expense.





c.   (i) In the parking lot, the open section of the parking space for disabled patrons shown in the photograph below has a running slope that is steeper than 1:48 and that is steeper than 3.1%. (ii) The running slope of this section of this parking space for disabled patrons has a running slope that is steeper than 1:48 and that is steeper than about 7%, in violation of Federal Law 2010; ADAAG § 502.4.   (iii) This running slope in this parking space for disabled patrons made the Plaintiff's wheelchair unstable.   (iv) The action required to reduce the running slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.



d.      (i) The change in level in the walkway to and from the side entrance door is greater than 0.5 inches.   (ii) The change in level of this walkway along the accessible route to the side entrance door, the walkway shown in the photographs below, is greater than 0.5 inches and is about 1.25 inches, in violation of Federal Law 2010; ADAAG §§ 502.4 and 303.3.   (iii) While moving in his wheelchair on this walking surface, this change in level stopped the forward movement of the Plaintiff's wheelchair.   (iv) The action required to reduce the change in level of this walkway is easily accomplishable and able to be carried out without much difficulty or expense.





e.      (i) The walking surface near the side exit door, shown in the photograph below, has a

cross slope that is steeper than 1:48 and that is steeper than 3.1%.   (ii) The cross slope of this

walking surface along the accessible route to the lobby entrance is steeper than 1:48 and is steeper

than about 5%, in violation of Federal Law 2010; ADAAG § 403.3.   (iii) While moving in his

wheelchair on this walking surface, the Plaintiff's wheelchair slipped sideways due to its cross

slope.   (iv) The action required to reduce the cross slope of this walking surface is easily

accomplishable and able to be carried out without much difficulty or expense.



f.      (i) The counter slope of the gutter immediately adjacent to the parking spaces for

disabled patrons is steeper than 1:20 and is steeper than 6%.   (ii) The counter slope of the gutter

immediately adjacent to the parking spaces for disabled patrons, and along the accessible route to

the hotel entrance, is steeper than 1:20 and is steeper than 6%, in violation of Federal Law 2010;

ADAAG § 406.2.   (iii) The Plaintiff encountered the counter slope of this gutter while moving in

his wheelchair, and it made his wheelchair unstable.   (iv) The action required to reduce the counter slope of this gutter adjacent to the parking spaces for disabled patrons is easily accomplishable and able to be carried out without much difficulty or expense.

**COUNTER IN LOBBY**

g.     (i) All of the counter surface in the lobby is higher than 36 inches above the floor.   (ii) All of the counter surface in the lobby is higher than 36 inches above the finish floor, in violation of Federal Law 2010; ADAAG § 904.4.1.   (iii) Due to the height of this counter surface above the floor, it was difficult for the Plaintiff to reach or to see items on this counter surface from his wheelchair.   (iv) The action required to provide a portion of this counter surface in the lobby that is 36 inches long minimum and 36 inches high maximum above the finish floor is easily accomplishable and able to be carried out without much difficulty or expense.

**MEN'S RESTROOM IN THE LOBBY**

h.     (i) In the men's restroom in the lobby, the width of the accessible toilet compartment is less than 60 inches.   (ii) The width of this accessible toilet compartment is less than 60 inches wide and is only about 33 inches wide due to the location of the counter for the sink, in violation of Federal Law 2010; ADAAG §§ 604.8.1 and 304.3.   (iii) Due to the location of the counter for the sink, it was very difficult for the Plaintiff to maneuver his wheelchair to use the toilet.   (iv) The action required to relocate the counter for the sink is easily accomplishable and able to be carried out without much difficulty or expense.

i.     (i) In the men's restroom in the lobby, the rear wall grab bar is less than 36 inches long. (ii) This rear wall grab bar is less than 36 inches long and is only about 24 inches long, in violation of Federal Law 2010; ADAAG § 604.5.2.   (iii) The Plaintiff had difficulty using this rear wall grab bar to transfer himself from his wheelchair to the toilet due to the short length of

this rear wall grab bar.   (iv) The actions required to install a grab bar of proper length and to relocate the counter for the sink are easily accomplishable and able to be carried out without much difficulty or expense.

j.     (i) In the men's restroom in the lobby, the counter surface for the undermount sink is higher than 34 inches above the floor.   (ii) This counter surface for the undermount sink is higher than 34 inches above the finish floor and is about 36 inches above the finish floor, in violation of Federal Law 2010; ADAAG § 606.3.   (iii) Due to the height of this counter surface above the finish floor, the Plaintiff had difficulty using the sink from his wheelchair.   (iv) The action required to lower the counter surface for this sink is easily accomplishable and able to be carried out without much difficulty or expense.

k.     (i) In the men's restroom in the lobby, the lavatory drain and water supply pipes under the sink are not insulated.   (ii) These lavatory drain and water supply pipes, shown in the photograph below, are not insulated under this sink, in violation of Federal Law 2010; ADAAG § 606.5.   (iii) Due to this lack of insulation on the drain and water supply pipes under this sink, the Plaintiff risked skin burns and injury to his legs when he used this sink.   (iv) The action required to insulate the drain and water supply pipes under this sink is easily accomplishable and able to be carried out without much difficulty or expense.



l.      (i) In the men's restroom in the lobby, the outlet of the paper towel dispenser is higher than 48 inches above the floor.   (ii) The outlet of this paper towel dispenser is higher than 48 inches above the finish floor and is about 54 inches above the finish floor, in violation of Federal Law 2010; ADAAG § 308.2.1.   (iii) Due to tis height above the floor, the Plaintiff tried but could not reach a paper towel while sitting in his wheelchair.   (iv) The action required to relocate this paper towel dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

m.      (i) In the men's restroom in the lobby, the bottom edge of the mirror's reflecting surface is higher than 40 inches above the floor.   (ii) The bottom edge of this mirror's reflecting surface is higher than 40 inches above the finish floor and is about 44 inches above the finish floor, in

violation of Federal Law 2010; ADAAG § 603.3.   (iii) Due to the height of this bottom edge of this mirror's reflecting surface above the floor, the Plaintiff could not see his full face in this mirror from his wheelchair.   (iv) The action required to relocate this mirror is easily accomplishable and able to be carried out without much difficulty or expense.

    n.   (i) In the men's restroom in the lobby, the coat hook is higher than 48 inches above the floor.   (ii) This coat hook is higher than 48 inches above the finish floor and is about 69 inches above the finish floor, and is outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010; ADAAG § 603.4.   (iii) The Plaintiff observed the height of this coat hook above the floor.   Due to its height above the floor, the Plaintiff cannot use it from his wheelchair.   (iv) The action required to relocate this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

    o.   (i) In the men's restroom in the lobby, the centerline of the water closet or toilet is not between 16 and 18 inches from the side wall.   (ii) The centerline of this water closet or toilet is not between 16 and 18 inches from the side wall, in violation of Federal Law 2010; ADAAG §§ 604.2.   (iii) Due to the distance from the centerline of this toilet to the side wall, the Plaintiff had difficulty using the grab bars to position himself to use the toilet, had difficulty transferring himself from his wheelchair to the toilet, and could not reach the toilet paper from a normal sitting position on the toilet.   (iv) The action required to relocate this toilet is easily accomplishable and able to be carried out without much difficulty or expense.

    p.   (i) In the men's restroom in the lobby, the flush control for the toilet is not mounted on the open and wide side of the clear floor space.   (ii) The water closet or toilet in the men's restroom in the lobby, shown in the photograph below, does not have the flush control mounted on the open and wide side of the clear floor space, in violation of Federal Law 2010; ADAAG §

604.6.   (iii) Due to the location of the flush control for the toilet, the Plaintiff could not flush the toilet from his wheelchair.   (iv) The action required to replace the toilet tank with the flush control on the other side is easily accomplishable and able to be carried out without much difficulty or expense.



**BREAKFAST AREA**

q.      (i) In the breakfast area, the handle to the waffle maker, the paper towel dispenser, and the top pastry container are all higher than 48 inches above the floor ("breakfast items").   (ii) These breakfast items are all higher than 48 inches above the finish floor where the reach depth is less than 20 inches, and they are outside of the reach range of an individual is a wheelchair, in violation of Federal Law 2010; ADAAG § 308.2.2.   (iii) Due to the height of these breakfast

items above the floor, the Plaintiff tried but could not reach them from his wheelchair.   (iv) The action required to relocate the breakfast items or to lower a portion of the breakfast counter is easily accomplishable and able to be carried out without much difficulty or expense.

r.      (i) In the breakfast area, there is no clear floor space under the sink.   (ii) This sink does not have any clear floor space underneath it as the sink sits on top of a counter with cabinets, in violation of Federal Law 2010; ADAAG §§ 305 and 306.2.3.   (iii) Due to the lack of clear floor space under this sink, the Plaintiff had difficulty using it and could not make a forward approach to this sink in his wheelchair.   (iv) The action required to create clear floor space under this sink by removing some cabinetry is easily accomplishable and able to be carried out without much difficult or expense.

**ACCESSIBLE GUESTROOM 124**

s.      (i) In accessible guestroom 124, the wall mount for the iron is higher than 48 inches above the floor.   (ii) This wall mount for the iron is higher than 48 inches above the finish floor, and when the iron is in the wall mount its handle is about 60 inches above the finish floor, and the iron is outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010; ADAAG § 308.2.   (iii) The Plaintiff tried but could not reach this iron from his wheelchair due to the height of the wall mount for the iron above the floor.   (iv) The action required to relocate the wall mount for the iron is easily accomplishable and able to be carried out without much difficulty or expense.

t.      (i) In accessible guestroom 124, the lid for the coffee maker is higher than 48 inches above the floor.   (ii) The lid of this coffee maker is higher than 48 inches above the finish floor and is about 62 inches above the finish floor, and is outside of the reach range of an individual in

a wheelchair, in violation of Federal Law 2010; ADAAG § 308.2.   (iii) Due to the height of the lid to this coffee maker above the floor, from his wheelchair, the Plaintiff could not reach it to place coffee in it to make himself coffee.   (iv) The action required to relocate or to replace this coffee make is easily accomplishable and able to be carried out without much difficulty or expense.

u.   (i) In accessible guestroom 124, the low end of the drapery rod pull is higher than 48 inches above the floor.   (ii) The low end of this drapery rod pull is higher than 48 inches above the finish floor and is outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010; ADAAG § 308.2.   (iii) Due to its height above the floor, the Plaintiff could not use this drapery rod pull to adjust the drapes from his wheelchair.   (iv) The action required to replace or extend this drapery rod pull is easily accomplishable and able to be carried out without much difficulty or expense.

v.   (i) In accessible guestroom 124, the security latch on the entrance door to the room is higher than 48 inches above the floor.   (ii) This security latch is higher than 48 inches above the finish floor and is about 61 inches above the finish floor, and is outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010; ADAAG § 308.2.   (iii) Due to its height above the floor, the Plaintiff tried but could not reach this security latch from his wheelchair.   (iv) The action required to relocate this security latch or to install another one that can be operated by an individual in a wheelchair is easily accomplishable and able to be carried out without much difficulty or expense.

w.   (i) In accessible guestroom 124, the restroom door pull side maneuvering clearance in a latch approach perpendicular to the doorway is less than 48 inches.   (ii) This restroom door pull side maneuvering clearance in a latch approach perpendicular to the doorway is less than the

minimum required clearance of 48 inches and is only about 44 inches, in violation of Federal Law 2010; ADAAG § 404.2.4.   (iii) Due to this lack of door pull side maneuvering clearance, the Plaintiff required assistance to position his wheelchair to enter this restroom.

x.   (i) In accessible guestroom 124, the slope of the shower floor is steeper than 1:48.   (ii) The slope of this shower floor is steeper than 1:48 and has slopes as steep as about 13%, in violation of Federal Law 2010; ADAAG § 304.2.   (iii) Due to the slopes of this shower floor, the Plaintiff required assistance to position himself to bathe.   (iv) The action required to reduce the slopes of this shower floor is easily accomplishable and able to be carried out without much difficulty or expense.

y.   (i) In accessible guestroom 124, a grab bar is located on the wall above the shower seat in the restroom.   (ii) A grab bar is located on the wall above the seat in this standard roll-in type shower compartment, in violation of Federal Law 2010; ADAAG § 608.3.2.   (iii) Due to this grab bar above the shower seat, the Plaintiff had difficulty remaining stable in a sitting position in this shower.   (iv) The action required to remove this grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

z.   (i) In accessible guestroom 124, the seat in the shower compartment is not a folding type seat and is not located on the side wall adjacent to the shower controls.   (ii) The seat in this standard roll-in type shower compartment is not a folding type seat, and is not installed on the side wall adjacent to the controls, in violation of Federal Law 2010; ADAAG § 610.3.   (iii) Due to the location and type of this shower seat, the Plaintiff required assistance to bathe.   (iv) The actions required to replace and properly locate a shower seat in this shower compartment are easily accomplishable and able to be carried out without much difficulty or expense.

aa.   (i) In the restroom of accessible guestroom 124, the height of the shower spray head is adjustable.   (ii) This shower spray head is adjustable and when the adjustment control knob is left above 48 inches above the finish floor of the shower, the adjustment knob cannot be reached by an individual in a wheelchair, in violation of Federal Law §§ 308.2 and 608.6.   (iii) Due to the height that the adjustment control knob for the shower was left prior to the Plaintiff checking in to room 124, about 68 inches above the finish floor, the Plaintiff tried but could not reach this control knob from his wheelchair.   (iv) The action required to put in place a written policy that for each new guest the shower height control knob will be left at or below 48 inches above the shower floor is easily accomplishable and able to be carried out without much difficulty or expense.

bb.   (i) In the restroom in accessible guestroom 124, the space between the bottom of the towel rack and the top of the rear wall grab bar is less than 12 inches.   (ii) The space between the bottom of the towel rack and the top of this rear wall grab bar is less than 12 inches, in violation of Federal Law 2010; ADAAG § 609.3.   (iii) Due to this lack of space between the towel rack and this rear wall grab bar, the Plaintiff had difficulty using the rear wall grab bar to transfer himself from his wheelchair to the toilet.   (iv) The action required to relocate this towel rack is easily accomplishable and able to be carried out without much difficulty or expense.

cc.   (i) In the restroom of accessible guestroom 124, the centerline of the toilet paper dispenser is not located between 7 and 9 inches from the front of the toilet.   (ii) The centerline of this toilet paper dispenser, shown in the photograph below, is not located between 7 and 9 inches from the front of the toilet, in violation of Federal Law 2010; ADAAG § 604.7.   (iii) Due to the location of this toilet paper dispenser, the Plaintiff could not reach toilet paper from a normal sitting position on the toilet.   (iv) The action required to replace this toilet paper

dispenser with an ADA compliant dispenser in the proper location is easily accomplishable and able to be carried out without much difficulty or expense.



dd.     (i) In the restroom in accessible guestroom 124, the flush control for the toilet is not mounted on the open and wide side of the clear floor space.   (ii) The water closet or toile in this restroom, shown in the photograph below, does not have the flush control mounted on the open and wide side of the clear floor space, in violation of Federal Law 2010; ADAAG § 604.6.   (iii) Due to the location of the flush control for the toilet, the Plaintiff could not flush the toilet from his wheelchair.   (iv) The action required to replace the toilet tank with the flush control on the other side is easily accomplishable and able to be carried out without much difficulty or expense.



ee.    (i) In the restroom of accessible guestroom 124, the coat hook is located higher than 48

inches above the floor.   (ii) This coat hook is located higher than 48 inches above the finish

floor and is about 67 inches above the finish floor, and it is outside of the reach range of an

individual in a wheelchair, in violation of Federal Law 2010; ADAAG § 603.4.   (iii) The

Plaintiff observed the height of this coat hook above the floor and he determined that he could

not reach it to hang up clothing or a towel.   (iv) The action required to relocate this coat hook is

easily accomplishable and able to be carried out without much difficulty or expense.

**HALLWAY AND VENDING**

ff.    (i) The force needed to open the hallway door is greater than 5 pounds.   (ii) The force

needed to open the hallway door is greater than 5 pounds (22.2 N) and is about 10 pounds,

pertaining to the continuous application of force necessary to fully open a door, in violation of

Federal law 2010; ADAAG § 404.2.9.   (iii) Due to the force necessary to open this hallway door, the Plaintiff required assistance to move through this doorway in his wheelchair.   (iv) The action required to adjust the door closer to this door is easily accomplishable and able to be carried out without much difficulty or expense.

   gg.   (i) In the vending machine room, the dollar bill inlet of the soda vending machine is higher than 48 inches above the floor.   (ii) The dollar bill inlet of this soda vending machine is higher than 48 inches above the finish floor, and is outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010; ADAAG § 308.2.2.   (iii) Due to its height above the finish floor, the Plaintiff tried but could not insert cash into this vending machine from his wheelchair.   (iv) The action required to lower the legs of this vending machine or to replace it with an ADA compliant vending machine is easily accomplishable and able to be carried out without much difficulty or expense.

   hh.   (i) In the vending machine room, the keys or buttons to operate the snack vending machine are all higher than 48 inches above the floor.   (ii) The keys or buttons to operate this snack vending machine are all higher than 48 inches above the finish floor, and is outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010; ADAAG § 308.2.2.   (iii) Due to the height of these keys or buttons above the finish floor, the Plaintiff tried but could not operate this snack vending machine from his wheelchair.   (iv) The action required to lower the legs of this snack vending machine or to replace it with an ADA compliant vending machine is easily accomplishable and able to be carried out without much difficulty or expense.

   **LAUNDRY**

   ii.   (i) The door knob to the laundry cannot be operated with a closed fist or loose grip.   (ii) The operation of the door knob to the laundry requires tight grasping, pinching, or twisting of the

wrist, and it cannot be operated with a closed fist or loose grip, in violation of Federal Law 2010; ADAAAG § 309.4.   (iii) The Plaintiff tired but could not operate this door knob to open the door to the laundry room with a closed fist or loose grip.   (iv) The action required to replace the hardware to this door to the laundry is easily accomplishable and able to be carried out without much difficulty or expense.

jj.    (i) In the laundry room, the clear floor space in front of the washer is not at least 30 inches wide and 48 inches deep.   (ii) Clear floor space 30 inches wide and 48 inches deep is not provided in front of this washer, in violation of Federal Law 2010; ADAAG § 605.3.   (iii) Due to the lack of clear floor space in front of this washing machine, the Plaintiff could not access this washing machine while in his wheelchair.

kk.    (i) In the laundry room, all of the counter surface is higher than 48 inches above the floor.   (ii) All of the counter surface in the laundry room is higher than 48 inches above the finish floor and is about 57 inches above the finish floor, and this counter surface is outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010; ADAAG § 308.2.   (iii) Due to its height above the floor, the Plaintiff tried but could not place anything on this counter.   (iv) The action required to lower a portion of this counter is easily accomplishable and able to be carried out without much difficulty or expense.

**ENTRANCE TO FITNESS CENTER**

ll.    (i) The entrance to the fitness center does not have signage with the International Symbol of Accessibility.   (ii) The entrance to this fitness center does not have signage with the International Symbol of Accessibility, in violation of Federal Law 2010; ADAAG §§ 216.6 and 703.7.2.1.   (iii) Due to the lack of signage with the International Symbol of Accessibility, the Plaintiff is deterred from staying at the Quality Inn, and the lack of such signage constitutes a

barrier to access the fitness center as it does not appear that the fitness center is accessible.   (iv) The action required to install signage with the International Symbol of Accessibility is easily accomplishable and able to be carried out without much difficulty or expense.

41.     All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

42.     The discriminatory violations described in paragraph 40 are not an exclusive list of the Defendants' ADA violations.   Plaintiff requires the inspection of the Defendants' place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access and to determine all of the areas of non-compliance with the Americans with Disabilities Act to which he was denied access including, but not limited to, the barriers to access he encountered in guestroom 124, the lobby, the restrooms in the lobby, breakfast area, and in the fitness center.

43.     The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendants' building and their facilities, and have otherwise been discriminated against and damaged by the Defendants because of the Defendants' ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated, will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

44.     Defendants have discriminated against the individual by denying individuals access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42

U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.  Furthermore, the Defendants continue to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

45.    Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is warranted.

46.    Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendants pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

47.    Defendants are required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendants' place of public accommodation since January 26, 1992, then the Defendants are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendants' facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendants' facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

48.     Notice to Defendants is not required as a result of the Defendants' failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendants.

49.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendants to alter the Quality Inn and the parking lot, access aisles and walkways along the accessible routes, to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendants cure their violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.     That the Court issue a Declaratory Judgment that determines that the Defendants are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.     Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendants to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services,

segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.   An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.   Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates Denver, Colorado as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze_____
Robert J. Vincze (CO #28399)
Law Offices of Robert J. Vincze
PO Box 792, Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*